**EASTERN MAINE MEDICAL CENTER, INC., Plaintiff,**

v.

**MAINE STATE NURSES ASSOCIATION, Defendant.**

**Civ. No. 94–0005–B.**

United States District Court, D. Maine.

Oct. 21, 1994.

Malcolm E. Morrell Jr., Eaton, Peabody, Bradford & Veague, Bangor, ME, for plaintiff.

Jeffrey Neil Young, McTeague, Higbee, Libner, MacAdam, Case & Watson, Topsham, ME, for defendant.

## ORDER AND MEMORANDUM OF DECISION

BRODY, District Judge.

Plaintiff Eastern Maine Medical Center (EMMC) brings this action pursuant to 29 U.S.C. § 185(a) of the Labor Management Relations Act, 1947. EMMC specifically requests that this Court vacate an arbitrator's award on the grounds that it violates the collective bargaining agreement between EMMC and Defendant Maine State Nurses Association (the Union). In accordance with the agreement, EMMC and the Union submitted a grievance to arbitration. The grievance arose out of a dispute over which of two applicants was most qualified for a staff nurse position at EMMC. The arbitrator found in favor of the grievant, Regilynn Brissette, who was represented by the Union. Subsequently, EMMC filed this action challenging the arbitrator's award. The Union responds that the arbitrator interpreted the agreement appropriately in accordance with the collective bargaining agreement. The Union further argues that in interpreting the agreement, the arbitrator did not abuse his discretion. Both parties seek summary judgment.

## FACTS

The relevant, undisputed facts are as follows: EMMC and the Union are parties to a collective bargaining agreement which provides for the arbitration of unresolved grievances relating to the interpretation, application, or alleged breach of any provision of the Agreement. (Compl. Ex. A at 49.) Article VIII, Section 3 of the Agreement provides that applicants for posted positions shall be considered on the basis of their professional competency, qualifications, and abilities. (*Id.* at 17.) Where these factors are relatively equal, however, the agreement requires that the applicant with the greatest seniority be selected. (*Id.*)

In 1992, two nurses who were members of the union, Regilynn Brissette and Lawna Robinson, applied for the single position of Staff Nurse. When the position was awarded to Robinson, Brissette responded by filing a grievance under the collective bargaining agreement. The Union and EMMC agreed to submit the unresolved dispute to arbitration and presented the following arbitral submission to the arbitrator:

1) Did the Employer violate Article VIII, Section 3 of the collective bargaining agreement by appointing Lawna Robinson, R.N. to the position of Staff Nurse in the Recovery Room of the Outpatient Surgery Complex?

2) If not, what shall be the remedy?

(Compl. Ex. B at 2.) After a hearing, the arbitrator determined that seniority should have governed the selection process because the two candidates were relatively equal in terms of professional competency, qualifications and abilities. (*Id.* at 9.) The arbitrator's decision therefore, awarded the position to Brissette, who was the senior of the two applicants. Subsequently, EMMC filed suit in this Court seeking to have the award vacated.

## DISCUSSION

Summary Judgment is appropriate only if "there is no genuine issue as to any material fact and ... the moving party is entitled to

judgment as a matter of law." Fed.R.Civ.P. 56(c). " 'The moving party is entitled to judgment as a matter of law' [when] the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

■ The First Circuit, however, even in summary judgment cases, has articulated a highly deferential standard governing judicial review of labor arbitration awards. *See El Dorado Technical Servs., Inc. v. Union General De Trabaja–Dores De Puerto Rico*, 961 F.2d 317 (1st Cir.1992) (Affirming District Court's upholding of arbitration award on Summary Judgment). "Only rarely, and in the most compelling circumstances, will a federal court tinker with an arbitral award made under the aegis of a collective bargaining agreement." *Id.* at 318. In fact, where the arbitrator's award depends on an interpretation of a collective bargaining agreement, a court should uphold that award "if it can find, within the four corners of the agreement, *any plausible basis for that interpretation.*" *Larocque v. R.W.F., Inc.*, 8 F.3d 95, 96 (1st Cir.1993) (citation omitted).

■ When presented with a challenge to an arbitration award, the reviewing court must consider both the collective bargaining agreement and the arbitral submission, *Id.*, (citations omitted), bearing in mind that courts are not authorized to make a final decision on the merits of the award. *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36, 108 S.Ct. 364, 369–70, 98 L.Ed.2d 286 (1987). "[C]ourts play only a limited role when asked to review the decision of an arbitrator. The courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." *Id.* *See also* the *Steelworkers* trilogy: *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960);

*United Steelworkers of Am. v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).

■ Arbitrators do not have unfettered discretion to interpret collective bargaining agreements nor may they impose a remedy which directly contradicts the language of the agreement. *Strathmore Paper Co. v. United Paperworkers Int'l Union*, 900 F.2d 423, 426 (1st Cir.1990). "[T]he power and authority of an arbitrator is totally derived from the collective bargaining agreement and . . . he violates his obligation to the parties if he substitutes 'his own brand of industrial justice' for what has been agreed to by the parties in that contract." *Georgia–Pacific Corp. v. Local 27, United Paperworkers Int'l Union*, 864 F.2d 940, 944 (1st Cir.1988) (quoting *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960)).

EMMC contends that the arbitrator's decision rests on his "own brand of industrial justice" and does not draw its essence from the "four corners of the agreement." Specifically, EMMC argues that the arbitrator overemphasized the importance of seniority in the selection of candidates, and misconstrued the term "relatively equal" as used in Article VIII, Section 3 of the agreement.[1]

According to EMMC, Section 3 is a "modified *merit* provision" which provides that applicants will be awarded positions based upon their competency, qualifications, and abilities. (Pl.'s Mem. Law. Supp. Mot. Summ. J. at 3.) ("Pl.'s Mem."). EMMC posits that seniority comes into play only after a comparison of these three factors has been made and the candidates have been found relatively equal as to merit. That is exactly what occurred in this case. The arbitrator stated: "I find that the grievant and Ms. Robinson were relatively equal in terms of professional competency, qualifications and abilities. Therefore, the Hospital's decision to award the position to

1. Article VIII, Section 3 states: "Applicants for the posted position shall be considered on the basis of their professional competency, qualifications, and abilities. Where professional compe-

tency, qualification, and abilities are *relatively equal*, seniority shall be the determining factor in choosing between such applicants." (Compl. Ex. A at 17.) (emphasis added).

Ms. Robinson violated the Contract." (Compl. Ex. B at 12.) The arbitrator first compared the two candidates and found them to be relatively equal. Only *then* did he award the position to Brissette based on seniority in accordance with the agreement.

The precise issue before the Court is whether the arbitrator abused his discretion in interpreting the phrase "relatively equal." In resolving the dispute, the Arbitrator stated:

> Under such a "relative ability" clause, competing employees need not be precisely equal to trigger seniority. People differ, so that few are exactly the same in terms of qualifications and abilities. Therefore, in order to give meaning to the provision, the junior employee must be shown to be substantially or significantly superior in abilities to be given priority over an applicant with greater seniority. Arbitrators often require management to show that the junior employee was "heads [sic] and shoulders" above the senior candidate in terms of qualifications and abilities.

(Compl. Ex. B at 10.)

EMMC asserts that the arbitrator's interpretation failed to draw its essence from the collective bargaining agreement because the arbitrator required EMMC to demonstrate that Robinson was "head and shoulders" above, or "clearly superior" to Brissette. (Pl.'s Mem. at 7.) EMMC specifically contends that: the phrase "relatively equal," as used in the agreement, is unambiguous on its face; the terms "head and shoulders" and "clearly superior" do not appear anywhere in the collective bargaining agreement; and the arbitrator improperly modified the collective bargaining agreement by superimposing the term "head and shoulders" on the "relatively equal" clause. (*Id.*)

The Court is not persuaded by EMMC's arguments. First, the term "relatively equal" in the collective bargaining agreement is not so clear and unambiguous that the arbitrator abused his discretion in finding that Robinson and Brissette were relatively equal. In fact, nowhere in the agreement are the terms "relatively equal," "professional competency," "qualifications," or "abilities" defined. It was precisely because the terms are ambiguous that EMMC and the Union were forced to submit the dispute to arbitration in the first place. (Def.'s Mem. Law Opp'n Pl.'s Mot. Summ. J. & Supp. Mot. Summ. J. at 7.) ("Def.'s Mem.").

■ Second, it is not dispositive that the terms "head and shoulders" and "clearly superior" do not appear in the collective bargaining agreement. An arbitrator abuses his discretion when his action directly contradicts the express language of the agreement. *Strathmore Paper Co.*, 900 F.2d at 426. Here, the decision to utilize a "head and shoulders" analysis does not contradict the express text of the collective bargaining agreement. The text states only that where two applicants are "relatively equal," seniority shall be the determining factor. (Compl. Ex. A at 17.) The fact that the arbitrator applied the "head and shoulders" test to determine if the candidates were relatively equal does not inexorably lead to the conclusion that he abused his discretion and violated the express language of the agreement. In fact, the arbitrator's opinion does not mention using the "head and shoulder" test until *after* a discussion of the arbitral submission and the precise language of the agreement. (Compl. Ex. B at 9–10.)

The arbitrator's opinion states that while Ms. Robinson had greater and more recent adult medical surgical experience, the total record does not indicate that Robinson was "head and shoulders" above Brissette. (*Id.* at 11.) The arbitrator found persuasive a statement by a supervisor of both nurses who had observed their work for years. The supervisor stated that, "in her judgment, neither nurse was significantly better than the other. They are *relatively equal.* There are differences. But the bottom line is that both can do the assessments necessary for a recovery room position.'" (*Id.*) (emphasis added). The Court is not persuaded that the arbitrator's decision failed to draw its essence from the collective bargaining agreement merely because he employed the "head and shoulders" test to determine if the two nurses were relatively equal.

■ EMMC also argues that the use of the "head and shoulders" test was not appro-

priate in this case because prior arbitration decisions did not utilize the test under similar circumstances. Prior arbitration awards, however, are not conclusive or binding nor are they entitled to the precedential effect accorded judicial decisions. *El Dorado Technical Servs.*, 961 F.2d at 321. In and of itself, a failure to follow a previous arbitrator's interpretation is insufficient to trigger judicial review. *Bacardi Corp. v. Congreso de Uniones Industriales de Puerto Rico*, 692 F.2d 210, 212 (1st Cir.1982).

In fact, EMMC seems to acknowledge that the "head and shoulders" test is recognized by arbitrators as a reasonable method for interpreting collective bargaining agreements. (*see* Pl.'s Mem. at 10.) Quoting an arbitration decision, EMMC relates:

The wording of relative ability clauses are varied. Most, however, speak in terms of substantially equal or relatively equal.... What it means, according to accepted arbitral authority, is that unless the junior employee is measurably more qualified than the senior employee, the senior employee is entitled to the job. *Some arbitrators state* that the junior employee must be head and shoulders above the senior employees [sic]. *Others hold* that the head and shoulders rule is too severe, that the difference need only be clearly discernable, not resting on technicalities.

(Pl.'s Mem. at 10–11.) (citation omitted) (emphasis added). The Court is not persuaded that the arbitrator's use of the "head and shoulders" test improperly modified the collective bargaining agreement between the parties or that it represented the arbitrator's "own brand of industrial justice."

The Court notes that Defendant cites the *Bettencourt* test as the applicable standard of review of arbitral decisions:

At a minimum, [the arbitrator] must establish that the award is "unfounded in reason and fact," is "based on reasoning so palpably faulty that no judge or group of judges, could ever conceivably have made such a ruling," or it is mistakenly based on a crucial assumption which is "concededly a non-fact."

(Def.'s Mem. at 6.) (citing *Bettencourt v. Boston Edison Co.*, 560 F.2d 1045, 1050 (1st Cir.1977) (citations omitted)). Plaintiff, however, has correctly pinpointed the applicable standards of review, which the Court articulates above in citing *El Dorado, Larocque, Strathmore*, and *Georgia–Pacific*. Even under this more permissive standard, EMMC has still failed to persuade the Court that the arbitrator's award warrants judicial review. This Court is presented with no convincing evidence that the arbitrator abused his discretion by contradicting the express language of the agreement or by going beyond the four corners of the agreement in determining that the two nurses were "relatively equal."

The Court concludes that the arbitrator acted within the bounds of his authority when he awarded the position to Brissette and that his award falls within the scope of the collective bargaining agreement and the arbitral submission. "So long as the arbitrator, acting within the scope of his delegated authority, is arguably construing the contract, his decision must stand." *El Dorado Technical Servs.*, 961 F.2d at 319 (citations omitted).

Accordingly, Defendant's Motion for Summary Judgment is *GRANTED* and Plaintiff's Motion for Summary Judgment is *DENIED*.

*SO ORDERED.*